### In re GRAVEL PRODUCTS CORPORATION.
### Ex parte LOGAN.

Circuit Court of Appeals, Second Circuit.
March 5, 1928.

No. 198.

**1. Shipping** ☞207—**Rule applicable to cases where cargo was in danger from water held inappropriate as to cargo consisting of mix-ture of sand and water (Rules and Regula-tions of Board of Supervising Inspectors, rule 11, § 16).**

In proceeding for limitation of liability, rule 11, § 16, of the Rules and Regulations of the Board of Inspectors of the Great Lakes, apply-ing only to cases where cargo was in danger from water, *held* inappropriate, where the ship required no such protection, in that the cargo itself consisted of a mixture of sand and water, and only protection necessary was from heavy seas.

**2. Shipping** ☞121(2)—**"Seaworthiness" re-quires only reasonable fitness for voyage.**

"Seaworthiness" involves no more than reasonable fitness for purpose of a voyage.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Sea-worthy—Seaworthiness.]

**3. Shipping** ☞121(1)—**Owners held not liable, on ground of unseaworthiness, for loss result-ing from unusual storm.**

Owners *held* not liable, on ground of unsea-worthiness, for loss resulting from storm of most unusual violence, resulting in leak in vessel be-yond control after shifting of cargo.

Appeal from the District Court of the United States for the Western District of New York.

Application by the Gravel Products Cor-poration for limitation of liability as owner of the ship Howard S. Gerken. Decree lim-iting liability, but holding the ship at fault, and petitioner and Agnes M. Logan, as ad-ministratrix, appeal. Affirmed in part, and in part reversed.

Brown, Ely & Richards and Desbecker, Fisk & Newcomb, all of Buffalo, N. Y. (John B. Richards, Laurence E. Coffey, and Walter C. Newcomb, all of Buffalo, N. Y., of coun-sel), for petitioner.

Burke & Desmond, of Buffalo, N. Y. (Thomas C. Burke and Charles S. Desmond, both of Buffalo, N. Y., of counsel), for claimant.

Before L. HAND, SWAN, and AUGUS-TUS N. HAND, Circuit Judges.

PER CURIAM. [1] The statement of facts in this case by the District Judge is sub-stantially unchallenged, and we accept it without repetition. We cannot, however, agree that section 16 of rule XI of the Rules and Regulations of the Board of Supervising Inspectors for the Great Lakes, applied to the Gerken. The cargo, of course, required no protection from water, being itself a mix-ture of sand and water. The ship required no such protection, because she was altogeth-er seaworthy, though her cargo boxes were filled with sand and water to the very scup-pers. The rule was plainly meant to apply only to cases where the cargo was in danger from water, else it would have been idle to require gaskets and tarpaulins. If it did not

apply in whole, it did not apply at all. What the claimant really required was, not a rule like that actually promulgated, but one which prescribed that a wet cargo must be roughly boarded to protect it from heavy seas. There was none such, and the rule that existed was plainly inappropriate to the situation.

There remains the question of whether the Gerken was seaworthy, independently of the rule. Merely to ship seas in heavy weather could not harm her; her boxes were watertight and already full of water. All that could happen was what did happen; the seas might be so violent as to shift the sand, or carry it out of the after box. However, at worst this would do no more than to give her a list, or to put her by the head, or both. A ship need not be in perfect trim to be seaworthy, and in this case we cannot tell how much of her list was due to the shift of cargo alone. The leak was in a forward compartment, and would in any event have put her down, and, once aleak, like all vessels, she became tender. It would be unwarranted to attribute her condition solely to the absence of hatch covers.

As soon as her pumps were found to be unable to keep down the leak, she was doomed; it was thereafter merely a question of time when she foundered. While it is probably true that she would have lived longer, if on an even keel, no vessel is so perfectly trimmed as not to list when she fills. It is the merest speculation to suppose that the crew would not have had to take to the boats before the Maitland arrived, or, if not, that they could have been transferred without recourse to the boats. Again, the testimony of the claimant's expert was without any basis whatever that the leak was due to her being by the head. She was already aleak before this occurred, and there is no reason whatever to conclude that the strains so set up still further opened her seams. They might, but it is only a possibility.

[2, 3] Seaworthiness involves no more than a reasonable fitness for the purposes of the voyage. To demand such foresight as would provide against the combination of events from which this ship foundered appears to us to insist upon more than reasonable preparation. She was sailing in summer upon inland waters for short trips, in the same rig, and fit as was usual for vessels in her trade. She encountered a storm of most unusual violence for the season, and developed a leak beyond her control. To say that her owners must have foreseen that, should all this happen, the seas would shift her cargo and aggravate the consequences of the leak, appears to us to set up an unduly severe standard of care.

The decree is reversed, so far as it holds the ship, at fault, and is otherwise affirmed.